UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ANNETTE OWEN                           *        CIVIL ACTION NO.  12-1179


VERSUS                                 *        JUDGE DONALD E. WALTER


CAROLYN W. COLVIN, ACTING              *        MAG. JUDGE KAREN L. HAYES
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION

REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social

security disability benefits.  The district court referred the matter to the undersigned United

States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of

the Commissioner be **REVERSED and REMANDED for further proceedings.**

Background & Procedural History

Annette Owen protectively filed the instant application for Title II Disability Insurance

Benefits on October 29, 2009.  *See* 14, 78-80.  She alleged disability as of July 1, 2008, because

of arthritis, trouble with her hip and back; inability to sit or stand for long periods of time; short

term memory loss; dizziness; inability to bend or turn around quickly; weakened immune system;

fibromyalgia; fatigue; and chronic pain.  (Tr. 120).  The claim was denied at the initial stage of

the administrative process.  (Tr. 49-54).  Thereafter, Owen requested and received a September

13, 2010, hearing before an Administrative Law Judge ("ALJ").  (Tr. 21-47).  In a November 9,

2010, written decision, however, the ALJ determined that Owen was not disabled under the Act,

finding at step four of the sequential evaluation process that she was able to return to her past

relevant work as a secretary. (Tr. 11-20).  Owen appealed the adverse decision to the Appeals

Council.  On March 14, 2012, however, the Appeals Council denied Owen's request for review;

thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On May 8, 2013, Owen sought review before this court.  Succinctly restated, she alleges

the following errors:

> (1)     the ALJ did not ensure that Plaintiff knowingly and intelligently waived her right
> to counsel, thereby depriving Plaintiff of a full and fair hearing, with resulting
> prejudice; and

> (2)     for various reasons, the ALJ's residual functional capacity assessment is not
> supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

*Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a

preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's

determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

> (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.
>
> (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.
>
> (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4)    If an individual's residual functional capacity is such that he or she can

still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5ᵗʰ Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Owen had not engaged in substantial gainful activity during the relevant period. (Tr. 16). At step two, he found that she suffers severe impairments of obesity and subjective pain. *Id.*[1] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 16-17).

### II. Residual Functional Capacity

The ALJ next determined that Owen retained the residual functional capacity to perform

---

[1] He also found that Owen's posttraumatic stress disorder and major depressive disorder were not severe impairments. *Id*.

the full range of light work.  (Tr. 18-19).[2]

### III.     Step Four

At step four, the ALJ determined that Plaintiff's residual functional capacity permitted

her to return to her past relevant work as a secretary, both as she actually performed it, and as the

job is performed generally.  (Tr. 20).[3]

### Discussion

### I.     Waiver of Right to Counsel and Resulting Prejudice

Social security claimants have a statutory right to counsel at any social security hearing.

42 U.S.C. § 406 (2003).  Furthermore, a claimant is entitled to receive adequate notice of her

right to counsel at an administrative  hearing.  *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir.

2003) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).  "Adequate notice" requires that

an ALJ apprise the claimant:  (a) how an attorney can assist claimant in the hearing; (b) sources

of free counsel and the possibility of contingency arrangements; and (c) limitation of attorney

---

[2]  Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even though the
> weight lifted may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of arm or
> leg controls.  To be considered capable of performing a full or wide
> range of light work, you must have the ability to do substantially
> all of these activities.  If someone can do light work, we determine
> that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3]   Past relevant work is defined as "the actual demands of past work or 'the functional
demands . . . of the occupation as generally required by employers throughout the national
economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing Social Security Ruling 82-
61).

fees to twenty-five percent of past due benefits, as well as court approval of the fees.  *Gullett v. Chater*, 973 F. Supp. 614, 620 (E.D. Tex.1997) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981)).  "Adequate notice" may be established by several written notices, plus oral confirmation by the ALJ that the claimant received the notices, has the right to a representative, but wishes to represent herself.  *See Castillo, supra*.

Here, Plaintiff received numerous written notices advising her of her right to representation.  *See* Tr. 56-70.  Moreover, at the September 13, 2010, hearing, she signed a waiver of representation wherein she affirmed that she understood her right to representation, voluntarily waived that right, asked to proceed without a representative, and acknowledged receipt of a list of organizations that provide legal services prior to the hearing.  (Tr. 77).

Nonetheless, according to the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX"), "the ALJ should ensure *on the record* that the claimant has been properly advised of the right to representation and that the claimant is capable of making an informed choice about representation."  *See* HALLEX I-2-6-52, 1993 WL 643033 (emphasis added).  Although the HALLEX does not carry the authority of law, the Fifth Circuit has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.  If prejudice results from a violation, the result cannot stand."  *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (internal citation omitted).  Nonetheless, "[p]rocedural perfection in administrative proceedings is not required."  *Mays v. Bowen*,  837 F.2d 1362, 1364 (5th Cir.1988).  Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

In addition, when a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted).  The ALJ's failure to develop an adequate record does not automatically compel reversal. *Id.*  Rather,

> [a]s in the case of a hearing held without waiver of the right to counsel, the claimant must, in addition, show that she was prejudiced as a result of [sic] scanty hearing. She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result.

*Kane supra* (internal quotation marks and citations omitted).

In his decision, the ALJ stated that "[a]though informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative." (Tr. 14).  Review of the hearing transcript, however, confirms that the ALJ did not ask Plaintiff on the record whether she had received the notices in the mail concerning her right to representation.  The ALJ also did not ask Owen whether she understood the information contained in those notices.  In another similarly postured case, this court was unable to conclude that the claimant had validly waived his right to an attorney at the hearing. *See Morris v. Astrue*, Civil Action No. 09-1833 (W.D. La. Oct. 29, 2010, R&R).

The court further finds that Owen has demonstrated cognizable prejudice as a result of the ALJ's omission in this case.  Counsel enrolled on Owen's behalf roughly two months after the ALJ's unfavorable decision. *See* Tr. 10.  Yet, within approximately two weeks after accepting representation, counsel was able to obtain a medical source statement from Plaintiff's treating physician, Shane Phillips, M.D., indicating that she was able to sit for no more than 30 minutes at a time.  (Tr. 474).  Although the Appeals Council considered this additional evidence, it found that it did not provide a basis for changing the ALJ's decision.  (Tr. 1-2).

In the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision.  *See Higginbotham v. Barnhart*  405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) (unpubl.) ("*Higginbotham II*").[4]  Rather, the evidence constitutes part of the instant record and provides a basis for remand so long as it is new, material and related to the period before the ALJ's decision.  *See Higginbotham, supra*; 20 C.F.R. § 404.970(b).[5]

Here, there is little question that the evidence that counsel submitted to the Appeals Council meets the foregoing criteria.  The medical source statement was not before the ALJ at the time of his decision; therefore, it is new.  Moreover, the statement includes limitation(s) more restrictive than the ALJ's residual functional capacity assessment; thus, if credited in lieu of the consultative examination, it likely would have changed the outcome of the ALJ's decision.[6]

---

[4]  Despite the presence of new evidence in *Higginbotham*, the panel on subsequent appeal upheld the district court's decision to affirm the Commissioner's denial of benefits. *Higginbotham II.*  The panel itself discounted a diagnosis of disability by claimant's treating physician as conclusory and unsupported.  *Id.*

[5]  *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record.  *See Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)).  Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period.  *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

[6]  In fact, the ALJ remarked in his decision that there was nothing in any of the treatment notes regarding an inability to sit, walk, or stand.  (Tr. 19).  An inability to sit for more than 30 minutes at a time suggests, at minimum, the need for a sit/stand option.  *See Titles II and XVI: Determining Capability to Do Other Work--implications of a Residual Functional Capacity for less than a Full Range of Sedentary Work*, SSR 96-9p (SSA July 2, 1996).  It is unclear from the record whether Plaintiff could perform her past relevant work with a sit/stand option.

Finally, the evidence appears to address the period prior to the ALJ's decision because it is premised on Plaintiff's longstanding impairments, and there is no evidence of any office visits in the intervening two months between the ALJ's decision and the issuance of the medical source statement.

Representation at the hearing also could have made a difference in this case because counsel could have asked the ALJ for a supplemental hearing to cross-examine consultative physician, Dr. Torrance.  Although this court has observed on least one occasion that it is not the practice of current counsel to cross-examine an unfavorable consultative physician in every case, the potential benefit of cross-examining the consultative physician was more than speculative here because the claimant took issue with, and controverted some of Dr. Torrance's specific findings at the hearing.

## II.      Residual Functional Capacity Assessment

The ALJ grounded the physical impairment component of his residual functional capacity assessment ("RFC") on the findings of the consultative physician, Dr. Torrance.  *See* Tr. 19.  In so doing, however, the ALJ failed to discuss or even consider the treatment notes and opinion of Plaintiff's longtime physician, Glenn Figueroa, M.D.

For example, on December 4, 2007, Plaintiff saw Dr. Figueroa for a disability physical. (Tr. 254-257).  She told him that she thought she became disabled about seven years earlier based on statements by her rheumatologist, "Dr. Broadwell."  *Id*.  According to Broadwell, she had to limit her physical activities.  *Id*.  Dr. Figueroa observed that Owen's neurological examination was limited by pain and an inability to stoop and bend, with very weak upper and lower extremity strength, and no lower extremity reflexes.  *Id*.  Figueroa recommended adhering to Dr. Broadwell's advice on physical and activity limitations, and restricted Owen from lifting objects

over five pounds, using both upper extremities.  *Id.*

At the hearing, Plaintiff explained that Dr. Broadwell limited her to sitting and/or standing for no more than 15 minutes at a time.  (Tr. 28).  Thus, by his report, Dr. Figueroa appears to have adopted these same limitations, which are inconsistent with the ALJ's RFC.

In her brief, the Commissioner contends that Dr. Figueroa's December 2007 opinion is of no moment because Plaintiff continued to work for another seven or eight months thereafter. While this argument enjoys some persuasive force – in no small part because Plaintiff continued to work for some seven years after receipt of a similar opinion from "Dr. Broadwell," – the court notes that Dr. Figueroa continued to treat Plaintiff until at least December 2009, i.e., more than one year after the alleged disability onset date.  Nonetheless, the ALJ neglected to even mention Dr. Figueroa or his many treatment notes.  Moreover, it is likely that Dr. Phillips, the physician who took over for Dr. Figueroa, considered Dr. Figueroa's treatment records in his medical source statement because Phillips contemplated diagnoses for fibromyalgia and chronic fatigue, which were not in his own treatment notes from Plaintiff's last visit in June 2010.  *See* Tr. 458-459.

It is manifest that the ALJ enjoys considerable latitude to assign less, little, or even no weight to the opinion of a treating physician – so long as he provides good cause for doing so. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  While the instant record may provide valid reasons to support a decision by the ALJ to assign less weight to Dr. Figueroa's opinion, no such findings were made in this case.  Furthermore, and critically here, the ALJ rendered his decision while under the apparently mistaken impression that there was nothing in the treatment notes regarding Owen's inability to sit, stand, or walk.  (Tr. 19).  Therefore, the court cannot conclude that the ALJ's error was harmless.  Consequently, reversal and remand is required.  *See Loza v.*

*Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (the ALJ and the Commissioner committed reversible error by failing to accord "great weight" to the medical reports of the treating physicians).

The court also questions the ALJ's assessment of the effects of Plaintiff's mental impairments.  In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000).  Furthermore, when evaluating the severity of mental impairments, the regulations require that a psychiatric review technique form be completed during the initial and reconsideration phases of the administrative review process.  20 C.F.R. § 1520a(e); 20 C.F.R. § 416.920a.  The psychiatric review technique rates the degree of functional limitation in four broad areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. §§ 1520a(c), 920a(c).  The ALJ must incorporate the pertinent findings and conclusions of the psychiatric review technique into his decision.  *Id*.

In this case, the ALJ dutifully applied the psychiatric review technique to Plaintiff's mental impairments and determined that they were non-severe.  The ALJ based his determination on the opinion of the non-examining agency psychologist, Linda Hartwell, Ph.D., who, in turn, principally relied on the seemingly benign findings of a May 3, 2010, psychological evaluation administered by consultative psychologist, David J. Williams, Ph.D.  (Tr. 386-407).

At the May 3 evaluation, Owen reported to Dr. Williams that she could not work because of pain, chronic fatigue, depression, and short term memory loss.  *Id*.  She reported symptoms of depression and anxiety, and difficulties making and keeping friends.  *Id*.  She stated that ever since her retirement, her depression had become less of an issue.  *Id*.  Also, her anxiety had

become much better controlled.  *Id*.  She reported that she was able to handle her personal

medications without assistance.  *Id*.

Williams noted that Owen was well-oriented in all spheres.  *Id*.  Her mood was mildly

depressed.  *Id*.  Her recent and remote memory remained intact.  *Id*.  No significant

preoccupations were noted.  *Id*.  She exhibited good judgment.  *Id*.  She was able to attend and

maintain focus; her impulse control was reflective and able to resist urges.  *Id*.  She tolerated the

stress of the interview without any problem, and demonstrated good effort, with persistence.  *Id*.

Williams diagnosed post-traumatic stress disorder; major depressive disorder, recurrent,

moderate.  *Id*.  He concluded that the mental status examination revealed mildly depressed mood.

Concentration, pace, and persistence were adequate.  *Id*.  However, he assigned a Global

Assessment of Functioning ("GAF") score of 58.

The court observes that "GAF is a standard measurement of an individual's overall

functioning level 'with respect only to psychological, social, and occupational functioning.'"

*Boyd*, 239 F.3d at 701 n2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL

MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (*DSM-IV*)).  Moreover, a GAF in the range

of 51-60 is defined as "**[m]oderate symptoms** (e.g. flat affect and circumstantial speech,

occasional panic attacks) **OR moderate difficulty in social, occupational, or school**

**functioning** (e.g., few friends, conflicts with peers or co-workers).  *DSM-IV*, pg. 32 (emphasis in

in original).

Although Dr. Williams' examination findings appeared to be mild, he characterized

Owen's depression as moderate, and assigned a GAF that reflected moderate difficulties in the

work environment.  Despite Dr. Williams' characterization of Plaintiff's impairments as

moderate in severity, the non-examining agency psychologist, Dr. Hartwell, determined that

Plaintiff's mental impairments were non-severe, i.e., that they had such minimal effect on Owen that they would not be expected to interfere with her ability to work.  *See Loza, supra.*  However, the court is not persuaded that Dr. Hartwell's opinion is necessarily consistent with Dr. Williams' findings.  Moreover, "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*."  *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added).  As this case is being remanded on other grounds, *see* discussion, *infra*, the ALJ should resolve this potential inconsistency by having Dr. Williams, or another examining psychologist, complete a medical source statement regarding the effects of Plaintiff's mental impairments.  Furthermore, because the stresses of Plaintiff's prior work appear to have exacerbated her symptoms,[7] the ALJ should address whether she will be able to maintain employment.  *See Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986).

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.[8]

---

[7] For example, on June 29, 2006, during a stressful period at work, Plaintiff's treating psychiatrist, Arun Gullapalli, M.D., assigned a GAF of 50 (Tr. 208-210), which denotes "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting ) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *DM-IV*, p. 32 (emphasis in original).

[8] The court need not address plaintiff's remaining assignments of error; they may be addressed upon remand.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 1st day of July 2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE